UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| CHUCK B. MCKINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19-CV-060-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| ANDREW SAUL, Commissioner of | ) | **ORDER** |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Chuck B. McKinney ("McKinney") brought this action pursuant to 42 U.S.C.
§ 405(g) to obtain judicial review of an administrative decision denying his claims for Disability
Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. [R. 1]  Now
before the Court are the parties' cross Motions for Summary Judgment. [R. 10; R. 15]  Having
reviewed the Motions, the briefs in support, and the entire record, the Court **AFFIRMS** the
Commissioner's decision because it is supported by substantial evidence and was decided by the
proper legal standards, **DENIES** McKinney's Motion for Summary Judgment, and **GRANTS**
the Commissioner's Motion for Summary Judgment.

I.      **Factual and Procedural Background**

This is Plaintiff's second application for disability benefits through the Social Security
Administration.  Plaintiff filed his original claim on August 22, 2012, but was denied by the state
agency which first reviewed his claim. [Tr. 71]  Plaintiff then requested a hearing before an
Administrative Law Judge ("ALJ"), which took place on September 23, 2014. [Tr. 71]

- 1 -

Following that hearing, an ALJ affirmed the denial of Plaintiff's claim, finding him able to perform a range of light work, but with some additional limitations. [Tr. 77–78]

Following this unfavorable decision, Plaintiff elected to file a new claim with the Social Security Administration and restart the disability insurance application process. [Tr. 258] Plaintiff filed his second application for disability benefits on May 9, 2016. [Tr. 258]  Upon refiling, state agency physician, Dr. Robert Culbertson, M.D., completed a Residual Functional Capacity ("RFC") assessment and opined that Plaintiff had the capacity to perform light work, with the limitations that Plaintiff:

- Can occasionally lift and/or carry 20 pounds;
- Can frequently lift and/or carry 10 pounds;
- Can stand and/or walk about six hours in an eight-hour workday;
- Can sit for six hours in an eight-hour workday;
- Is unlimited in his ability to push and/or pull;
- Can frequently climb ramps/stairs;
- Can occasionally climb ladders/ropes/scaffolds;
- Is unlimited in his ability to balance;
- Can frequently stoop, kneel, and crouch;
- Can occasionally crawl;
- Is unlimited in his ability to reach;
- Can occasionally handle objects bilaterally;
- Is unlimited in his ability to finger and feel objects;
- Is unlimited in his ability to undergo extreme cold, extreme heat, wetness, humidity, and noise;
- Must avoid concentrated exposure to vibration;  and
- Must avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation.

*See* [Tr. 100–102 (summarizing the limitations)].

A second state agency physician, Dr. Diosdado Irlandez, M.D., reviewed and adopted Dr. Culbertson's RFC assessment and each limitation within it. [Tr. 137–140]  While the ALJ did

not directly address Dr. Culbertson's RFC assessment in her written decision, she did review Dr. Irlandez's identical RFC assessment which mirrored and affirmed Dr. Culbertson's.[1] [Tr. 26]

Dr. Mary K. Thompson, Ph.D., another state agency doctor, reviewed Plaintiff's mental ailments and performed a Mental RFC ("MRFC") assessment of Plaintiff. [Tr. 103]  She found him able to "understand/remember/carryout simple and detailed instructions up to SVP 4; maintain attention and concentration for two-hour segments, eight hours a day, 40 hours a week; respond appropriately to supervisors and co-workers; tolerate occasional contact with the public; and adapt to routine changes and avoid hazards with reasonable support and structure." [Tr. 103] Upon review at the state agency, Dr. Kay Barnfield, Psy.D., affirmed Dr. Thompson's MRFC. [Tr. 140]

Consultative psychologist Dr. Megan Green, Psy.D., performed a separate assessment of Plaintiff's psychological functioning and opined that "[h]e would likely be capable of understanding, remembering, and carrying out instructions"; "would likely be capable of responding appropriately to supervision and of relating effectively to co-workers"; and "would likely be capable of sustaining persistence and pace and of adapting to change." [Tr. 676]

Neither party disputes that Plaintiff's treating physician is Dr. Robert Royalty, M.D.  Dr. Royalty did not perform a mental or physical RFC assessment for the Plaintiff, but has examined and treated Plaintiff since 2013. [Ex. B16F]  Dr. Royalty diagnosed Plaintiff with carpal tunnel syndrome, De Quervian's disease, sciatic nerve damage, anxiety, and hypertension. [Ex. B2F] Dr. Royalty wrote in several treatment assessments—as early as his first ever examination of the Plaintiff two years before Plaintiff sought surgical relief for his carpal tunnel issues—that Plaintiff was "disabled," but did not explain why or describe precisely what he meant by noting

---

[1] Plaintiff does not allege that the ALJ failed to consider Dr. Culbertson's opinion or allege error in the ALJ's decision to not discuss it in her final written opinion.

that Plaintiff was disabled. [Tr. 820, 823, 825, 827, 829, 832, 835, 840]  Plaintiff also testified to

suffering from depression, heart disease, asthma, coronary artery disease (CAD), and chronic

obstructive pulmonary disease (COPD). [Tr. 46–47]

ALJ Charlie M. Johnson presided over an oral hearing on July 11, 2018. [Tr. 37]  After a

discussion with Plaintiff regarding his symptoms and ailments, ALJ Johnson posed the following

hypothetical to James Primm, a vocational expert ("VE"):

> Assume a person of the claimant's age, education level, past work background with
> the claimant's same skills. Assume further that the individual is able to work at the
> light exertional level with the following restrictions: frequent climbing—frequent
> climbing stairs, ramps, kneeling, crouching, crawling; avoid moderate exposure to
> pulmonary irritants; avoid concentrated exposure to vibration and hazards;
> occasional climbing ladders, scaffolds, ropes and stoop; can carry out simple and
> detailed instruction up to SVP 4; can maintain attention, concentration for two hour
> segments; can respond appropriately to supervisors and co-workers; occasional
> contact with the public.

[Tr. 61–62]

The VE testified that an individual with the Plaintiff's age, education, and work

experience, in conjunction with the limitations included in ALJ Johnson's hypothetical, could

perform occupations in the national economy.  Specifically, the VE concluded that such an

individual could work as a garment sorter, a non-postal mail clerk, and as a documentation

specialist. [Tr. 62]

ALJ Johnson then granted Plaintiff's attorney time to pose hypothetical questions to the

VE. [Tr. 63]  Plaintiff's counsel asked if a hypothetical person would be able to perform a job in

the national economy if, in addition to the limitations included in the ALJ's hypothetical, he was

also limited to occasional handling. [Tr. 63]  The VE responded that adding occasional handling

to the limitations the ALJ listed would render that hypothetical individual unable to perform

work at any level in the national economy. [Tr. 63–64]

ALJ Johnson issued a decision on August 1, 2018. [Tr. 15]  After reviewing Plaintiff's testimony, the VE's testimony, several doctors' assessments of the Plaintiff, and years of medical tests and treatment notes, the ALJ found Plaintiff not disabled. [Tr. 22]  The ALJ concluded Plaintiff could perform light work, but with the following additional limitations:

> [Plaintiff] could frequently climb stairs/ramps; occasionally climb ladders, ropes, and scaffolds; occasionally stoop; frequently kneel, crouch, and crawl. [Plaintiff] needed to avoid even moderate exposure to pulmonary irritants; and avoid concentrated exposure to vibration and hazards. [Plaintiff] could carry out simple and detailed instructions up to SVP 4. [Plaintiff] could maintain attention/concentration for 2-hour segments. [Plaintiff] could respond appropriately to supervisors/co-workers. [Plaintiff] could have occasional contact with the public.

[Tr. 22]

ALJ Johnson also found that Plaintiff's pulmonary ailments rendered him disabled pursuant to listing 3.02, which sets the criteria for disabling chronic respiratory disorders; however, she found Plaintiff did not meet the listing until June 14, 2018—after Plaintiff's insured status ended. [Tr. 29]  The RFC that ALJ Johnson generated is nearly identical to the state agency RFC assessment affirmed by Dr. Irlandez and Dr. Barnfield [Tr. 140], as well the opinion of Dr. Green [Tr. 676] and the ALJ who denied Plaintiff's first application [Tr. 77–78]  However, where the state agency RFC assessments recommended that Plaintiff be limited to occasional handling, after reviewing Plaintiff's medical records ALJ Johnson concluded that the lifting and carrying restrictions associated with light work accounted for Plaintiff's wrist issues without adding a handling limitation. [Tr. 137 (Irlandez, affirming Culbertson); Tr. 22 (ALJ's RFC)]  Handling is defined as the ability to seize, hold, grasp, or turn an object, or to otherwise work with one's whole hand. SSR 85-15, 1985 WL 56857, at *7 (January 1, 1985).  The only other limitation which is less restrictive than one endorsed by Dr. Irlandez is the crawling

limitation, which Plaintiff does not challenge. [Tr. 137 (Irlandez, mirroring Culbertson); Tr. 22 (ALJ's RFC)]

Unsatisfied with the ALJ's decision, Plaintiff appealed to this Court, where Plaintiff and the Commissioner subsequently filed cross Motions for Summary Judgment. [R. 10; R. 15] Plaintiff's primary contention in his Motion is that medical evidence proves he was disabled prior to December 31, 2016, the date Plaintiff's insured status ended. [R. 10-1 p. 1] Plaintiff does not challenge the ALJ's determination that his insured status expired December 31, 2016. Plaintiff asserts the following: (1) Plaintiff met listing 3.02 prior to the ALJ's assigned date; (2) the ALJ failed to consider Plaintiff's breathing issues when calculating Plaintiff's RFC and questioning the VE; (3) ALJ Johnson erred by not including a handling limitation in Plaintiff's RFC when the state agency RFC assessment recommended only occasional handling; (4) the ALJ erred by not including a handling limitation in the hypothetical given to the VE; and (5) the ALJ failed to consider Plaintiff's symptoms, including pain. [R. 10-1 pp. 7–12]

## II.     Standard of Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citation omitted). The administrative process for determining whether a claimant is entitled to disability benefits proceeds in five steps.[2] 20 C.F.R. § 404.1520. First, claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the

---

[2] Plaintiff's application involves claims for both DIB and SSI. The regulations governing the evaluation of disability for DIB (found at 20 C.F.R. § 404.1520) and SSI (found at 20 C.F.R. § 416.920) are identical for purposes of the five-step analysis. *See, e.g., Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (noting the "parallel" regulations governing DIB and SSI claims); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) (referencing both regulations in reciting the five-step sequential process).

disability application. 20 C.F.R. § 404.1520(a)(4)(i).  Second, claimant must show that he suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii).  Third, if claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iii).

Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and claimant has a severe impairment, the Commissioner will then review claimant's RFC and relevant past work to determine if he can do past work; if so, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).  A claimant's RFC represents the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1).  When calculating a claimant's RFC, the Commissioner must assess all relevant medical and other evidence, including the claimant's statements about his symptoms, such as pain. 20 C.F.R. § 404.1545(a)(3).  However, an ALJ does not need to discuss evidence in her written opinion to show she considered it, and the failure to discuss record evidence, including medical and other opinions, does not denote that the ALJ failed her burden to consider that evidence. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)); *McHone v. Berryhill*, No. 5:18-CV-206-DCR, 2018 WL 4344458, at *5 (E.D. Ky. Sept. 11, 2018).

Claimants have the burden to prove that their ailments rendered them disabled at steps one through four. 20 C.F.R. § 416.912(a)(1).  Claimants must also prove they were disabled prior to the expiration of their insured status. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 926 (6th Cir. 1987) (holding an award of disability benefits is predicated on a showing of disability prior to the expiration of plaintiff's insured status).  Consequently, where the claimant

believes a certain limitation should be included in his RFC, he has the burden to prove that the limitation is necessary. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("[T]he claimant bears the burden of proving the existence and severity of limitations caused by her impairments."). If the claimant fails to prove that he is disabled at steps one through four, then at the fifth step the burden moves to the Commissioner, who must then identify jobs in sufficient number in the economy that the claimant could perform given his RFC and vocational profile. *Id.*

Federal courts must uphold the Commissioner's conclusions "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 735 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). District courts cannot review underlying administrative decisions *de novo*, resolve conflicts of evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 285–86 (6th Cir. 1994). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). "[E]ven if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ," courts must uphold the Commissioner's decision. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### III.   Analysis

### A.   Plaintiff Did Not Meet Listing 3.02 Until June 14, 2018.

The listings describe, for each major body system, impairments that are severe enough to prevent any individual from doing any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a).  Claimants bear the burden, at step three in the disability determination process, of demonstrating that they meet the given criteria for a particular listing. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 404.1512(a)(1).

A claimant qualifies as disabled under listing 3.02 by meeting the criteria in 3.02A or 3.02B for a person of their height and age range, with relevant age ranges being 0–20, and 20+. 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Both are based on measurements taken during a forced expiratory maneuver, during which the claimant must inhale as deeply as possible, and then exhale to the greatest extent possible. *Id.*  Listing 3.02A measures claimant's FEV1, which is the volume of air claimant exhales in the first second of the forced expiratory maneuver. *Id.*  Listing 3.02B measures claimant's FVC, which is the total volume of air claimant exhales during the entire forced expiratory maneuver. *Id.*  The score measured against the listing requirements will be the *highest* FEV1 value (for 3.02A) or the highest FVC value (for 3.02B), whether or not those values come from the same forced expiratory maneuver or separate ones. *Id.*  When the claimant's FEV1 is less than 70% of the predicted normal value, testing must repeat after the administration of a bronchodilator, and the post-bronchodilator value becomes the controlling value for the purposes of meeting the listing. *Id.*

Here, Plaintiff is 72.8 inches tall and is older than 20. [Tr. 1187]  For someone of that height and age range, 3.02A requires an FEV1 of less than or equal to 1.9, and 3.02B requires an FVC of less than or equal to 2.40. C.F.R. Pt. 404, Subpt. P, App. 1.  Plaintiff alleges that he met

listings 3.02A and 3.02B as of November 14, 2017. [R 10-1 p. 6]  On that date, Plaintiff's FEV1

was 1.97 pre-bronchodilator, and 1.40 post-bronchodilator. [*Id.*]  His FVC was 2.50

pre-bronchodilator and 1.76 post-bronchodilator. [*Id.*]  Plaintiff's FEV1 was greater than 70% of

the expected value, thus the controlling FEV1 is the pre-bronchodilator result. C.F.R. § Pt. 404,

Subpt. P, App. 1; [*Id.*].  Accordingly, Plaintiff did not meet listing 3.02A or 3.02B on November

14, 2017.  However, his FEV1 on June 14, 2018 was 1.84 (satisfying 3.02A), and his FVC on

that date was 2.39 (satisfying 3.02B). [R. 10-1 p. 6]  Consequently, Plaintiff qualified as disabled

under listing 3.02 on that date, and the ALJ was correct in finding that Plaintiff did not meet

listing 3.02 until then. [Tr. 29]

### B.    The ALJ's RFC Assessment and Hypothetical Accounted for Plaintiff's Breathing Impairment.

ALJs are granted discretion to interpret the plaintiff's medical history and either agree or

disagree with state agency doctors' conclusions regarding the propriety of individual limitations

in plaintiff's RFC. *See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th

Cir. 1987); *see also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728–29 (6th Cir. 2013).

Where an ALJ's  review of the medical record leads her to agree with the unanimous conclusions

of medical experts that a particular limitation should be included in plaintiff's RFC, the ALJ's

decision to include that limitation is supported by substantial evidence. *See Rudd*, 531 F. App'x

at 728–29 (finding substantial evidence supported ALJ's MRFC because it aligned with state

agency doctors' MRFC assessments and objective medical evidence); *Torres v. Comm'r of Soc.

Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012) ("Substantial evidence supports the ALJ's RFC and

disability determinations . . . [T]he RFC and the limitations imposed are consistent with the

majority of the opinions expressed by both treating and examining sources."); *Edwards v.

Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004) (finding an ALJ's decision to omit a

postural limitation supported by substantial evidence when each medical experts' RFC

assessment excluded it and the ALJ reviewed objective medical reports).

As a prefatory matter, insofar as Plaintiff asserts that the ALJ failed to consider his

breathing limitation, he is incorrect.  The ALJ devoted a substantial portion of her opinion to

reviewing medical records pertaining to Plaintiff's pulmonary issues, discussed Dr. Irlandez's

RFC assessment which addressed Plaintiff's breathing issues, and, most importantly, ALJ

Johnson included restrictions in Plaintiff's RFC to account for his pulmonary limitations. *See*

*Rudd*, 531 F. App'x at 728 ("Rudd alleges that the ALJ failed to consider his upper-extremity

problems. However, the record reflects that the ALJ specifically addressed the medical evidence

relating to Rudd's upper extremities."); *Webb v. Berryhill*, No. 5:18-CV-34-HRW, 2019 WL

3080752, at \*3 (E.D. Ky. July 15, 2019) ("A review of the ALJ's decision establishes that,

contrary to Plaintiff's claim of error, the ALJ did consider Plaintiff's ability to sit, stand and

walk.  He discussed the various medical opinions in the record, which, in turn, included

discussions in this regard."); [Tr. 22–25].

Moreover, the restrictions in Plaintiff's RFC which the ALJ included to address his

pulmonary issues have a substantial evidentiary basis. [Tr. 22]  The ALJ extensively reviewed

the medical records recounting Plaintiff's breathing issues, and with the exception of the

crawling limitation—which Plaintiff does not challenge—the exertional, postural, and

environmental restrictions which address Plaintiff's breathing issues are either exactly identical

to or more restrictive than the limitations which Dr. Irlandez recommended when affirming Dr.

Culbertson's RFC determination. *See Rudd*, 531 F. App'x at 728 (finding substantial evidence

supported ALJ's MRFC because it directly aligned with state doctors' MRFC assessment and the

ALJ extensively considered objective medical evidence);  *Torres*, 490 F. App'x at 754 (finding

substantial evidence supports the ALJ's RFC determination because it was consistent with medical opinions); *Edwards*, 97 F. App'x at 569; [Tr. 22 (ALJ's RFC determination); Tr. 137– 138 (Dr. Irlandez's RFC determination); Tr. 137–139 (Irlandez, affirming Culbertson)]

Finally, Plaintiff also appears to allege that the hypothetical ALJ Johnson presented to the VE failed to take Plaintiff's pulmonary issues into account. [R. 10-1 p. 10]  However, the hypothetical includes the same limitations as the RFC, and, as outlined in this section, the ALJ's RFC accounts for Plaintiff's breathing issues. *See Rudd*, 531 F. App'x at 728; [Tr. 22 (ALJ's RFC); Tr. 61–62 (ALJ's hypothetical)]  This congruity reflects that the ALJ also accounted for Plaintiff's pulmonary issues when forming the hypothetical she posed to the VE, and ensured that the hypothetical included the limitations which she found credible based on the record. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (holding the ALJ's hypothetical is properly formed when it includes all the limitations the ALJ finds credible based on the record).

### C.    Substantial Evidence Supports the ALJ's Decision to Omit Occasional Handling from Plaintiff's RFC.

#### i.    The ALJ Properly Discounted Dr. Royalty's Opinion.

ALJs must afford a claimant's treating physician's medical opinion controlling weight so long as it is supported by medically acceptable clinical and diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  However, a treating physician's opinion that the plaintiff is disabled does not constitute a medical opinion for the purposes of administrative review, as the decision regarding a claimant's disability status is left to the sole discretion of the Commissioner. 20 C.F.R. § 404.1527(d)(1)–(3); *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 727 (6th Cir. 2014); *McCubbin v. Astrue*, No. 2:10-CV-149-DLB, 2011 WL

- 12 -

1671635, at *3 (E.D. Ky. May 3, 2011). Furthermore, ALJs are not required to follow any treating physician's opinion which is conclusory or lacks clear explanation. *Cohen v. Sec. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted) ("The ALJ, however, is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.").

As a preliminary issue, the Court notes that Plaintiff did not challenge the ALJ's assignment of weight to the opinion of any medical professional, and it is not an issue on appeal. However, because Plaintiff challenges the exclusion of a handling limitation from his RFC, the Court will analyze the weight afforded to the opinion of each doctor mentioned in the ALJ's decision who opined on Plaintiff's wrist issues.

The ALJ correctly discounted the opinion of Dr. Royalty, who wrote on several occasions that Plaintiff was disabled. [Tr. 820, 823, 825, 827, 829, 832, 835, 840] The determination that Plaintiff is disabled is left to the sole discretion of the Commissioner, therefore Dr. Royalty's conclusion that Plaintiff was disabled does not constitute a *medical* opinion, and accordingly is not entitled to any deference. 20 C.F.R. § 404.1527(1)–(3); *King v. Heckler*, 742 F.2d 968, 972–73 (6th Cir. 1984) (citation omitted) ("Since it was not Dr. Larrick's prerogative to make the legal determination of disability, the ALJ was not bound by his conclusory statement."); *McCubbin*, 2011 WL 1671635, at *3 ("A treating physician's opinion is only entitled to deference when it is a *medical opinion* . . . When a treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is "disabled" or "unable to work" . . . the opinion is not entitled to any particular weight.")

This is especially so where, as here, a physician's conclusory opinion lacks sufficient explanatory support. *King*, 742 F.2d at 973. Plaintiff carries the burden of explaining why

evidence constitutes substantial support for his claim of disability. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Yet here, Dr. Royalty never discussed the connection between Plaintiff's examination results and the conclusion that Plaintiff was disabled, nor has Plaintiff produced any evidence showing why those examination results were sufficient to support the conclusion that he is disabled. *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 837–38 (6th Cir. 2005) (holding a physician's assessments conclusory where the physician never discussed those conclusions and the plaintiff produced no evidence showing that examination results were sufficient to support the doctor's opinion).

### ii. The ALJ Properly Discounted the State Agency Physicians' RFC Assessments As to the Handling Limitation.

ALJs do not owe any deference to the opinions of state agency doctors. *Jenkins v. Berryhill*, No. 7:18-CV-088-DCR, 2019 WL 440590, at *4 (E.D. Ky. Feb. 4, 2019) ("[T]he ALJ is not required to give any particular weight to the opinion of a non-treating source."); *see also Gayheart*, 710 F.3d at 376 ("[O]pinions from nontreating and nonexamining sources are never assessed for controlling weight."). While state agency doctors' opinions can serve as valuable evidence, ALJs must base their RFC assessments on a review of the entire medical record, rather than simply relying on opinion evidence. *See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987). ALJs are charged with determining the plaintiff's RFC based on their own evaluation of the evidence, not with parroting physicians. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) (quoting *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013)).

Accordingly, ALJs properly contradict physicians' RFC assessments when substantial objective evidence points to a contrary conclusion. *See Rudd*, 531 F. App'x at 728 (finding substantial evidence supported ALJ's conclusion that plaintiff could perform light work despite

no physician opining that Plaintiff could perform light work); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) (citation omitted) ("We have previously rejected the argument that [an ALJ's RFC assessment] cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *see also Shepard*, 705 F. App'x at 442–43 ("To require the ALJ to base her RFC on a physician's opinion would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability.").

Here, Dr. Culbertson and Dr. Irlandez are state agency physicians, meaning the ALJ owed their RFC assessments no particular deference. *Gayheart*, 710 F.3d at 376. Moreover, substantial evidence supports the ALJ's decision to formulate a less restrictive handling limitation than Dr. Culbertson and Dr. Irlandez, as (1) Plaintiff was found frequently to have full grip strength, no wrist instability or muscle atrophy, normal sensation in his hands, and full wrist range of motion; and (2) carpal tunnel release surgery and steroid injections mitigated signs and symptoms of Plaintiff's carpal tunnel syndrome. *See Dugan v. Comm'r of Soc. Sec.*, 742 F. App'x 897, 904 (6th Cir. 2018) (finding substantial evidence supported ALJ's decision to impose a less restrictive handling limitation than doctors recommended when Plaintiff displayed normal grip strength and coordination, and surgery mitigated her carpal tunnel pain); *McCubbin v. Astrue*, No. 2:10-149-DLB, 2011 WL 1671635, at * 8 (E.D. Ky. May 3, 2011) (finding substantial evidence supported ALJ's rejection of an occasional handling limitation when Plaintiff retained full grip strength and no muscle atrophy was present); *Howard v. Berryhill*, No. 5:17-CV-316-HRW, 2018 WL 3557264, at *3–*4 (E.D. Ky. July, 24, 2018) (finding substantial evidence supported ALJ's less restrictive handling limitation when Plaintiff retained 4/5 or 4+/5 grip strength); *see also Hardaway*, 823 F.2d at 927 (finding substantial evidence supported

ALJ's less-restrictive RFC when plaintiff's pulmonary issues responded well to treatment); [Ex. B2F; Ex. B16F].  Accordingly, the Court cannot say that the ALJ's decision, handed down after extensive review of Plaintiff's medical records, falls below the more than a "mere scintilla of evidence threshold." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440–41 (6th Cir. 2012)

      **D.**      **The Hypothetical Given to the VE Was Properly Formed.**

At the fifth step, the burden of proof shifts to the Commissioner to prove that the plaintiff is able to work. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  Upon reaching this point, the Commissioner must provide substantial evidence showing that there is a significant number of jobs in the national economy that the plaintiff can perform, given his residual functional capacity and vocational qualifications. *See Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

To satisfy this burden, the ALJ may use VE testimony as to the existence of jobs that the plaintiff can perform. *Id*. This testimony often comes in the form of a response to a hypothetical question asking whether there are jobs of sufficient number in the economy which someone with the plaintiff's age, education, work experience, and residual functional capacity could perform. 20 C.F.R. § 404.1520(a)(4)(v).  However, the hypothetical must be supported by evidence in the record and VE testimony can provide substantial evidence only if the ALJ's hypothetical accurately portrays the plaintiff's impairments. *See Varley*, 820 F.2d at 779; *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) ("An ALJ may ask a vocational expert hypothetical questions, provided the question is supported by evidence in the record.").

The hypothetical has evidentiary support and accurately portrays the plaintiff's impairments when the ALJ includes all of the functional limitations she found to be credible based on her review of the record. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230,

1235 (6th Cir. 1993); *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 494 (6th Cir. 2016)

(citation omitted).  While VEs may respond to questions posed by Plaintiff's counsel, an ALJ is

not "required to rely on a VE's . . . response based on limitations that she rejected." *Rudd v.*

*Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (citation omitted); *Ward v. Saul*, No.

7:18-CV-68-DLB, 2020 WL 479260, at *7 (E.D. Ky. Jan. 29, 2020) (citation omitted).

       Here, the ALJ thoroughly examined Plaintiff's medical records and found that Plaintiff's

wrist issues did not necessitate adding a handling limitation to Plaintiff's RFC, and thus did not

include such a limitation in the hypothetical posed to the VE. [Tr. 25]  While state agency

physicians recommended that a limitation to occasional handling be included in Plaintiff's RFC,

the ALJ did not adopt that recommendation, and thus was not obligated to include it in the

hypothetical. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516–517 (6th Cir. 2010) (holding

that, unlike here, an ALJ was required to include a limitation in the hypothetical after adopting a

doctor's opinion that it was necessary); *Swafford v. Astrue*, No. 6:09-CV-265-KSF, 2010 WL

2612325 at *6 (E.D. Ky. June 25, 2010) (holding that because the ALJ discounted a doctor's

opinion and disagreed with his conclusion that a limitation was necessary, the ALJ correctly

excluded that limitation from the hypothetical).

       Because the ALJ found, after reviewing all of the medical and other evidence in the

record, that it was not necessary to include an occasional handling limitation in Plaintiff's RFC,

it was proper to exclude such a limitation from the hypothetical posed to the vocational expert.

*Casey*, 987 F.2d at 1235; *Spicer*, 651 F. App'x at 494.

      **E.**    **Plaintiff Waived Any Argument Regarding the ALJ's Assessment of**
              **Plaintiff's Credibility.**

       When a plaintiff raises an argument that consists of a bare assertion with no supporting

evidence or explanation, that argument is waived. *See, e.g., McPherson v. Kelsey*, 125 F.3d 989,

995–96 (6th Cir.1997) (citations omitted) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").  Consequently, in social security cases it is not the Court's responsibility to comb through the entire record to substantiate a plaintiff's conclusory allegation of error against the ALJ. *See Dunn v. Astrue*, No. 5:10-CV-312-DCR, 2011 WL 1630287, at *3–*4 (E.D. Ky. Apr. 29, 2011)*; Halcomb v. Colvin*,  No. 6:14-CV-160-HAI, 2015 WL 4603279, at *9 (E.D. Ky. July 29, 2015) (quoting *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("Where a claimant has failed to specifically identify the alleged error, the Sixth Circuit has limited consideration to the 'particular points that [claimant] appears to raise[.]'").

Plaintiff states the following in his brief: "consideration should be given to all of the Plaintiff's symptoms, including pain, and the extent to which the signs and findings confirm those symptoms. Here, the ALJ has failed to do so." [R. 10-1 p.12]  Plaintiff does not attempt to show which symptom(s) the ALJ ignored, nor does he explain how or in what manner the ALJ failed to consider or weigh his symptoms.  Plaintiff, at the end of his brief, simply tacks on the allegation that the ALJ failed to consider Plaintiff's symptoms. [*Id.*]

Because this claim is undeveloped and devoid of any legal or factual support, Plaintiff has waived the argument that the ALJ failed to consider Plaintiff's symptoms. *Halcomb*, 2015 WL 4603279, at *9.  The Plaintiff did not offer any basis for this assertion, and the Court has no obligation to develop this argument *sua sponte*. *See Dunn*, 2011 WL 1630287, at *4 (citing *McPherson*, 125 F.3d at 995–96).

However, it is worth noting that the ALJ did consider Plaintiff's symptoms. ALJ Johnson noted Plaintiff complained of symptoms from his pulmonary issues, carpal tunnel syndrome, heart issues, and anxiety. ALJ Johnson then devoted nearly six full pages to comparing Plaintiff's complaints with objective medical evidence from his visits with his treating physician Dr. Royalty from July 2013 to April 2018, as well as with the findings of consultative psychologist Dr. Green. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013); *Ray v. Berryhill*, No. 7:17-CV-137-DLB, 2018 WL 1937576, at *5 (E.D. Ky. Apr. 24, 2018) (holding an ALJ considered plaintiff's symptoms by referencing a doctor's report which discussed those symptoms); [Tr. 22–27].

## IV.    Conclusion

For the above reasons, and with the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1.    The Plaintiff's Motion for Summary Judgment [**R. 10**] is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment [**R. 15**] is **GRANTED**.

3.    The decision of the Commissioner is **AFFIRMED**.

4.    A judgment will be entered contemporaneously with this Order.

This the 12th day of August, 2020.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY